1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT C. BURLEW,

11          Petitioner,              No. CIV S-08-2009 LKK CHS P

12      vs.

13   A. HEDGPETH,

14          Respondent.            <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16   I.    <u>INTRODUCTION</u>

17          Petitioner Robert C. Burlew, is a state prisoner proceeding pro se with a petition

18   for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner attacks his conviction in the

19   Shasta County Superior Court, case number 03F1651, for receiving stolen property.

20   II.   <u>CLAIMS</u>

21          Petitioner makes the following claims:

22          A.      Violation of his right to be free from unreasonable search and seizure;

23          B.      The trial court erred by admitting his statement into evidence; and

24          C.      He received ineffective assistance of trial counsel.

25          Upon careful consideration of the record and the applicable law, the undersigned

26   will recommend that petitioner's petition for habeas corpus relief be denied.

III.   FACTUAL AND PROCEDURAL BACKGROUND

A.   Facts[1]

Around 10:30 to 10:45 p.m. on March 3, 2003, Deputy Sheriff James Beaupre was on patrol in the area of Placer Road and Silver King Road in Shasta County. Beaupre was sitting in his patrol car surveilling a suspected drug manufacturing house. The area is residential and somewhat rural. He had a "ride-along" with him- someone who was in training to be a deputy sheriff.

He had been sitting in that location for approximately five to ten minutes when a car being driven by defendant attracted Beaupre's attention. The car was making a left hand turn, and appeared to initiate the turn after the front of the car had already passed the intersection. When the car made the turn, its two right side wheels went off the pavement into the dirt. Defendant did not turn on his turn signal until he was at least half way through the turn; however, there was no other traffic. Defendant appeared to be going too fast to properly negotiate the turn.

Beaupre stopped the car because he believed the erratic driving might be an indication the driver was intoxicated. In his report, Beaupre listed the reason for stopping defendant was for violating Vehicle Code section 22108, which states: "Any signal of intention to turn right or left shall be given continuously during the last 100 feet traveled by the vehicle before turning."

After the vehicle made the turn, Beaupre turned his spotlight on and lit up the vehicle. He turned on his headlights and overhead lights to effect a stop of the vehicle. After the stop, Beaupre asked for defendant's identification. Defendant was the driver of the vehicle, and his passenger was Georgina Rerich. Beaupre radioed the information to dispatch, which advised him defendant was on probation for a theft-related offense and was subject to search. Beaupre then asked defendant to step out of the vehicle, and told defendant he was going to do a probation search. Beaupre had Rerich exit the vehicle as well.

Beaupre pat searched defendant and found a jewelry box containing jewelry in defendant's shirt pocket. Defendant was also wearing a woman's bracelet on his left wrist. Beaupre asked defendant why he had women's jewelry in his pocket, and defendant responded it had slid across the dashboard while he was driving, so he put it in his pocket. Defendant claimed the jewelry belonged to Rerich.

Beaupre told defendant he was not under arrest, but that Beaupre needed to find out what was going on. Beaupre put defendant in the back of the patrol vehicle, and went to talk to Rerich. The

[1] This statement of facts is taken from the January 9, 2007 opinion by the California Court of Appeal for the Third Appellate District, case number C050354 (hereinafter Opinion), lodged with respondent's answer as Exhibit D.

2

patrol vehicle's doors were closed and defendant was not able to open the doors from the inside. Rerich told Beaupre the jewelry did not belong to her. Beaupre searched the vehicle. The trunk was full of property. Among the items in the trunk were a large telescope, a pellet gun, a Makita drill, a camera, and a shoebox containing checks from 1999 and a bill with the name "Shirley Forseng" on it.

When Beaupre questioned defendant about why he had the items in his trunk, he claimed he was moving the items for someone named Jeremy and Ray-Ray. Beaupre telephoned Forseng, who informed him that some of the property in defendant's trunk had been stolen from her home.

After speaking to Forseng, Beaupre again spoke with defendant, who was sitting in the back of the patrol car. Defendant was not handcuffed, had not been informed he was under arrest, and Beaupre at no time had drawn his service revolver. Beaupre asked defendant if he thought the items in the trunk were stolen, and defendant said "he thought maybe they were and [that] he was moving them or helping someone move them[.]" When defendant made this statement, he was seated in the back of the patrol car, and the door was open. After defendant made the statement, Beaupre arrested him. Defendant was not advised of his Miranda rights until after he was handcuffed and arrested for receiving stolen property.

Shirley Forseng testified she locked her door when she left for work at 8:00 a.m. on March 3, 2003. Around 4:00 p.m. she received a telephone call from her boyfriend telling her that her house had been broken into. The door had been pried open. The intruders had taken a telescope, her silver jewelry, a Makita drill, a BB gun, a camera, a spotlight, and other things.

Forseng testified defendant and his wife had been to her house three times. Defendant had offered to do some work on her property. On one occasion, defendant and his wife were visiting, and Forseng showed them some Christmas presents they had received, including the telescope and a crystal collection, both of which were among the items stolen.

Forseng's neighbor, Frank Mascaro, testified he had not seen anyone around Forseng's house the day of the burglary. Simone White, a friend of defendant's, testified she had been visited by Nikki Carter and her boyfriend Jeremy on March 3, 2003. They brought over a number of items, including jewelry and a telescope. White was going to drive them somewhere, but defendant came by and agreed to drive them. They loaded the items in defendant's car, but Nikki and Jeremy took other items in duffle bags, and left on foot. Rerich, White's roommate, asked defendant if he would drive her somewhere. He agreed, and they left. When Nikki and Jeremy returned, they were angry because they thought defendant had stolen their property.

1   Opinion at 2-6.

2          During the first trial defense counsel notified the court of a conflict of interest,

3   causing the trial judge to declare a mistrial.  Id. at 6.  The court appointed new defense counsel

4   and a second trial commenced.  Id.  At the conclusion of that trial the jury acquitted petitioner of

5   burglary but found him guilty of receiving stolen property.  Id.  The trial court found an

6   allegation that petitioner had been convicted of three prior serious or violent felonies true.  Id. at

7   2.  Petitioner was sentenced to a prison term of 25-years to life on July 21, 2005.  Clerk's

8   Transcript, Volume 1 ("1CT") at 535.

9          B.      Post Trial Proceedings

10                 1)      State Appellate Review

11         Petitioner filed an appeal with the California Court of Appeal,

12   Third Appellate District, on March 14, 2006.  Answer, Ex. A.  On January 9, 2007, that court

13   affirmed the trial court's judgment in a reasoned but unpublished opinion.  Answer, Ex. D.

14   Petitioner then sought review in the California Supreme Court on February 15, 2007.  Answer,

15   Ex. E.  That petition was summarily denied on March 21, 2007.  Answer, Ex. F.

16                 2)      Federal Review

17         Petitioner next petitioned the United States Supreme Court for certiorari.  The

18   Supreme Court denied that petition on October 1, 2007.  See Burlew v. California, __ U.S. __,

19   128 S.Ct. 169 (Mem.)(2007).  Petitioner then filed this federal petition on August, 27, 2008.

20   IV.    APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

21         An application for a writ of habeas corpus by a person in custody under a

22   judgment of a state court can be granted only for violations of the Constitution or laws of the

23   United States.  28 U.S.C. § 2254(a).

24         Federal habeas corpus relief is not available for any claim decided on the merits

25   in state court proceedings unless the state court's adjudication of the claim:

26                 (1) resulted in a decision that was contrary to, or involved an

4

1            unreasonable application of, clearly established federal law, as
           determined by the Supreme Court of the United States; or

2

3            (2) resulted in a decision that was based on an unreasonable
           determination of the facts in light of the evidence presented in the
           State court proceeding.

4 /////

5  28 U.S.C. § 2254(d).

6         Although "AEDPA does not require a federal habeas court to adopt any one

7 methodology," Lockyer v. Andrade, 538 U.S 63, 71 (2003), there are certain principles which

8 guide its application.

9         First, the "contrary to" and "unreasonable application" clauses are different. As

10 the Supreme Court has explained:

11            A federal habeas court may issue the writ under the "contrary to"
           clause if the state court applies a rule different from the governing

12            law set forth in our cases, or if it decides a case differently than we
           have done on a set of materially indistinguishable facts. The court

13            may grant relief under the "unreasonable application" clause if the
           state court correctly identifies the governing legal principle from

14            our decisions but unreasonably applies it to the facts of the
           particular case. The focus of the latter inquiry is on whether the

15            state court's application of clearly established federal law is
           objectively unreasonable, and we stressed in Williams [v. Taylor,

16            529 U.S. 362 (2000)] that an unreasonable application is different
           from an incorrect one.

17 /////

18 Bell v. Cone, 535 U.S. 685, 694 (2002). It is the habeas petitioner's burden to show the state

19 court's decision was either contrary to or an unreasonable application of federal law. Woodford

20 v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360 (2002). It is appropriate to look to lower court

21 decisions to determine what law has been "clearly established" by the Supreme Court and the

22 reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597,

23 598 (9th Cir. 2000).

24         Second, the court looks to the last reasoned state court decision as the basis for

25 the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). So long as the

26 state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no

1  matter how brief.  Lockyer, 538 U.S. at 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000).

2          Third, in determining whether a state court decision is entitled to deference, it is

3  not necessary for the state court to cite or even be aware of the controlling federal authorities "so

4  long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v.

5  Packer,  537  U.S. 3, 8 (2003).  Moreover, a state court opinion need not contain "a formulary

6  statement" of federal law, so long as the fair import of its conclusion is consonant with federal

7  law.  Id.

8  V.      DISCUSSION OF PETITIONER'S CLAIMS

9          A.      Search and Seizure[2]

10                 1)      Description of Claim

11         Petitioner argues that he was not speeding, did not cross driving lanes, and did not

12 drive erratically.  Mem. of P&As at 11.  He argues that the officer did not have reasonable

13 suspicion to justify stopping his vehicle and therefore "all the evidence seized" was the result of

14 an illegal search and seizure and should not have been admitted against him.  Id. at 11-17.

15 Petitioner also argues that he was denied an opportunity for a full and fair litigation of this claim.

16 Petition at 4.

17                 2)      State Court Opinion

18 The California Court of Appeal rejected this claim stating:

19     Defendant filed a Penal Code section 1538.5 motion in the first
20     trial to suppress the evidence seized by Beaupre on the ground
       Beaupre had no reasonable suspicion to stop defendant's vehicle.
21     The trial court denied the motion, stating: "this poorly articulated
       left turn late at night, ... would cause a reasonable police officer to
22     conclude that [he] need[ed] to make a car stop to see whether or
       not someone in that vehicle ... is impaired...."

23     Defendant claims the trial court erred in denying the suppression

24 _____

25         [2] Ground One and Ground Two of petitioner's petition are closely related.  Petition at 4.
   In the Memorandum in Support of the petition he has combined these grounds into one
26 argument.  Mem of P&A at 11-22.  This issue is one argument and will therefore be analyzed as
   one claim.

motion because he did not commit a violation of Vehicle Code section 22108, and because Beaupre's suspicion that defendant might have been intoxicated was not reasonable under the circumstances.

A law enforcement officer may stop a motorist only if the facts and circumstances support a reasonable suspicion that the driver has violated the law.  (People v. Miranda (1993) 17 Cal.App.4th 917, 926.)  Defendant did not violate Vehicle Code section 22108 because a companion code section, 22107, indicates a motorist is not required to signal unless another vehicle "may be affected by the movement."  Beaupre testified there was no other traffic on the road at the time of defendant's left turn.  However, an officer's reliance on the wrong statute does not make the stop unlawful if the facts are sufficient to lead the officer to reasonably suspect there has been a violation of a statute that correctly applies to the defendant's conduct.  (In re Justin K. (2002) 98 Cal.App.4th 695, 700.)

Erratic driving may justify a stop to determine whether the driver is intoxicated or otherwise impaired, even in the absence of any traffic violation.  (People v. Russell (2000) 81 Cal.App.4th 96, 102.)  The reasonableness of the stop must be determined by examining the totality of the circumstances. (People v. Wells (2006) 38 Cal.4th 1078, 1083.)

In this case the deputy saw a vehicle traveling late at night near an area of suspected illegal drug activity.  The vehicle drove erratically while negotiating a turn at an excessive rate of speed.  The turn was so poorly negotiated that the vehicle left the pavement.  Under these circumstances, the deputy could have reasonably suspected the driver might be under the influence of drugs or alcohol, making the initial stop lawful.  The trial court correctly denied the motion to suppress.

/////

Opinion at 6-7.

        3)       Applicable Law and Discussion

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. 465, 494 (1976).  Thus, a Fourth Amendment claim can only be litigated on federal habeas where petitioner demonstrates that the state did not provide an opportunity for full and fair litigation of the claim; it is

1 immaterial whether the petitioner actually litigated the Fourth Amendment claim, whether the

2 state courts correctly disposed of the Fourth Amendment issues tendered to them, or even

3 whether the claim was correctly understood.  Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th

4 Cir.1996); Siripongs v. Calderon, 35 F.3d 1308, 1321 (9th Cir.1994); Gordan v. Duran, 895 F.2d

5 610, 613 (9th Cir.1990).

6        Petitioner argues that he did not receive an opportunity for a full and fair litigation

7 of this claim because the "trial court misstated and omitted facts ...."  Petition at 4.  Misstated or

8 omitted facts however are not enough to establish that petitioner's claim was not fully and fairly

9 litigated, even assuming arguendo that the error resulted in an incorrect decision.  Mack v. Cupp,

10 564 F.2d 898, 902 (9th Cir. 1977).

11        Petitioner raised this claim before the trial court and the state appellate court.

12 There is no evidence of record that he did not receive a full and fair litigation of this claim.  This

13 claim is therefore barred in this federal habeas proceeding.  Stone, 428 U.S. at 494.

14       B.   Admission of Statement

15            1)   Description of Claim

16        Petitioner argues that his statement that he thought the items found in his vehicle

17 "might have been stolen" was the result of a custodial interrogation in violation of his Miranda

18 rights.  Petition at 5; Mem. of P&As at 25.  He argues therefore that the admission of his

19 statement at trial violated his rights under the Fifth and Fourteenth Amendments.  Mem. of

20 P&As at 26.

21            2)   State Court Opinion

22 The California Court of Appeal rejected this claim stating:

23     Defendant contends his statement about the items in his trunk
    being stolen was obtained in violation of his Miranda rights.  Both

24     trial judges heard and rejected defendant's motion to exclude his
    admission, finding defendant was not in custody at the time of the

25     statement.

26     Miranda directs that before police officers may question any

8

person who is "taken into custody or otherwise deprived of his freedom of action in any significant way[,]" they must first warn the person "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." (Miranda, supra, 384 U.S. at p. 444.)  Any statement obtained in violation of this rule cannot be used to establish guilt.  (Ibid.)

A Miranda warning is required only when a person is subjected to a custodial interrogation.  (People v. Mickey (1991) 54 Cal.3d 612, 648.)  A "custodial interrogation" is a situation in which " 'a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' [Citation.]" (Ibid., quoting Miranda at p. 444 [at p. 706].)

In determining whether there has been a custodial interrogation, a trial court first establishes the circumstances surrounding the interrogation, then determines from those circumstances whether a reasonable person in the defendant's position would have experienced a restraint on his freedom of movement to the degree normally associated with a formal arrest.  (People v. Aguilera (1996) 51 Cal.App.4th 1151, 1160.)  Among the relevant circumstances are: "(1) whether the suspect has been formally arrested, (2) absent formal arrest, the length of the detention, (3) the location, (4) the ratio of officers to suspects, (5) the demeanor of the officer, including the nature of the questioning." (People v. Lopez (1985) 163 Cal.App.3d 602, 608, fns. omitted.)  Other factors are "whether the suspect agreed to the interview and was informed he or she could terminate the questioning, whether police informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement during the interview, and whether police officers dominated and controlled the interrogation or were 'aggressive, confrontational, and/or accusatory,' whether they pressured the suspect, and whether the suspect was arrested at the conclusion of the interview." (People v. Pilster (2006) 138 Cal.App.4th 1395, 1403-1404.)

In this case, defendant had not been formally arrested when Beaupre put him in the back of the patrol car, and in fact had been told he was not under arrest, but was being searched pursuant to the conditions of his probation.  Defendant was not ordered into the back of the patrol car, but was told Beaupre needed him to sit in the back of the car while Beaupre searched defendant's vehicle pursuant to the probation condition.  Defendant's movement was restricted when he was placed in the back of the patrol car, but Beaupre placed defendant there for Beaupre's own safety.

Defendant was in the back of the patrol car for approximately 30 minutes before he made the admission.  During this time, Beaupre searched defendant's trunk, spoke with defendant, contacted

9

dispatch to get Forseng's telephone number, and talked to Forseng. This was not an extended period of time under the circumstances.

There were two deputies and two suspects present. However, the second deputy was in training, and did not participate in any part of the questioning or search. Beaupre's demeanor was not confrontational or accusatory. Neither Beaupre nor the deputy in training ever drew their service revolvers. Defendant was not handcuffed.

Based upon the brief duration of the detention, the fact that defendant was specifically informed he was not under arrest, and the non-confrontational manner of the questioning, we conclude a reasonable person in defendant's circumstances would not have considered himself in custody. The suppression motion was properly denied.

/////

Opinion at 7-10.

### 3)   Applicable Law

In Miranda v. Arizona, the United States Supreme Court declared that a person questioned by law enforcement officers after being "taken into custody or otherwise deprived of his freedom of action in any significant way" must first "be warned that he has the right to remain silent, that any statements he does make may be used against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda v. Arizona, 384 U.S. 436, 444 (2009). "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial." Stansbury v. California, 511 U.S. 318, 322 (1994) (per curiam); see Missouri v. Seibert, 542 U.S. 600, 608 (2004) ("Miranda conditioned the admissibility at trial of any custodial confession on warning a suspect of his rights; failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained.").

An officer's duty to administer Miranda warnings, however, arises "only where there has been such a restriction on a person's freedom as to render him 'in custody.' " Stansbury, 511 U.S. at 322 (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam)). When a suspect has not formally been taken into police custody, he is nevertheless

considered to be "in custody" for <u>Miranda</u> purposes if he has been "deprived of his freedom of action in any significant way."  <u>United States v. Craighead</u>, 539 F.3d 1073, 1082 (9th Cir.2008) (quoting <u>Miranda</u>, 384 U.S. at 444).  In determining whether an individual was in custody, a court must examine the objective circumstances surrounding the interrogation.  <u>Stansbury</u>, 511 U.S. at 322.  The ultimate inquiry, however, is "whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."  <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983) (quoting <u>Mathiason</u>, 429 U.S. at 495).  The Supreme Court has explained:

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.

/////

<u>Thompson v. Keohane</u>, 516 U.S. 99, 112 (1995).  This inquiry is objective.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 667 (2004).

4)    <u>Discussion</u>

At the time of the commitment offense petitioner was subject to a term of probation requiring him to "submit his person, property, vehicle and residence to a warrantless search at any time with or without . . . probable cause by any peace officer or probation officer." 1CT at 234.  Officer Beaupre informed petitioner that he was going to conduct a probation search and placed petitioner in the back of his patrol car.  <u>Id.</u> at 248, 255.  Petitioner was placed in the patrol car to ensure Officer Beaupre could safely search petitioner's vehicle.  <u>Id.</u> at 311.  Prior to placing petitioner in the patrol car Officer Beaupre informed him that he was not under arrest.  <u>Id.</u> at 248, 255, 291.  Petitioner was not handcuffed while in the back of the patrol car.  <u>Id.</u>

There was no formal arrest because petitioner was explicitly informed prior to his statement that he was not under arrest.  While petitioner's movements were somewhat restrained,

11

it was not to the degree of a formal arrest.  Petitioner was informed that his vehicle was being

searched subject to the terms of his probation and was specifically told that he was not under

arrest.  While he was placed in the back of the patrol car, his hands were not cuffed and he did

not remain in the vehicle for an extended period of time prior to making his statement.  A

reasonable person in petitioner's position, knowing that he had to comply with the vehicle search

but having been specifically informed that he was not under arrest, would not have considered

himself in custody and would have felt free to "terminate the interrogation."  The trial court's

admission of the statement was therefore not improper.

Petitioner has not shown that his statement was the result of a custodial

interrogation and he therefore is not entitled to relief on this claim.

C.       Ineffective Assistance of Trial Counsel

1)       Description of Claim

Petitioner argues that his trial counsel was ineffective for failing to properly

cross-examine Officer Beaupre regarding testimony petitioner argues was inconsistent.  Petition

at 5.  Petitioner argues that during the hearing regarding the search of his vehicle, Officer

Beaupre testified that when asked about the stolen items petitioner stated "he believed they were

probably stolen."  Mem. of P&As at 36.  Petitioner argues that statement was inconsistent with

Officer Beaupre's later trial testimony that petitioner "thought possibly they were stolen . . . ."

Id. at 36.

2)       State Court Opinion

The California Court of Appeal rejected this claim stating:

Defendant has the burden of demonstrating that his trial counsel's performance
was objectively deficient under prevailing professional norms and prejudicial.
(People v. Hinton (2006) 37 Cal.4th 839, 876.)  To establish prejudice, defendant
must show "a reasonable probability that, but for counsel's failings, the result of
the proceeding would have been more favorable to the defendant."  (Ibid.)  There
is a strong presumption that counsel's performance falls within the range of
reasonable assistance, and tactical errors are not generally reversible.  (Ibid.)

Defendant's trial counsel appears to have made a tactical decision that it would be

better to argue defendant's exact words were not recorded than to give Beaupre a chance to reconcile his two statements. This is especially true since there is very little difference under the circumstances between saying something possibly was stolen and something probably was stolen. No matter what defendant's exact statement, his counsel's argument was the same-that defendant made the statement not because he knew the items were stolen, but because he concluded as much based on his observations after he was detained. There is no reasonable probability the result would have been more favorable to defendant had his counsel introduced Beaupre's earlier testimony.

Opinion at 12.

### 3)   Applicable Law

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally, competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003). In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

1  F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's

2  performance was deficient before examining the prejudice suffered by the defendant as a result

3  of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground

4  of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d

5  949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

6  /////

7           4)      Discussion

8           The difference between "probably stolen" and "possibly were stolen" is so minor

9  that petitioner's trial counsel likely made a tactical decision to avoid giving Officer Beaupre the

10  opportunity to explain these statements.  Both statements indicate an admission that petitioner

11  had some idea that the items were stolen but was not certain.  Focusing cross-examination on

12  petitioner's precise words would have only unnecessarily increased the jury's exposure to his

13  admission.  Even if during that examination Officer Beaupre struggled to explain the differences

14  it is highly unlikely the jury's verdict would have been different.

15           Aside from petitioner's admission the jury was presented with evidence that

16  petitioner was wearing a woman's bracelet, had a jewelry box in his pocket, and had stolen items

17  from a recent burglary in his trunk along with a bill bearing the name of the burglary victim.  It

18  is unlikely the jury would have reached a different verdict if only petitioner's trial counsel had

19  confronted Officer Beaupre with his differing testimony that petitioner said either "he believed

20  they were probably stolen" or "thought possibly they were stolen . . . ."

21           Petitioner has not shown any prejudice and therefore is not entitled to relief on

22  this claim.

23  VI.   CONCLUSION

24           Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a

25  writ of habeas corpus be denied.

26           These findings and recommendations are submitted to the United States District

                                                14

1  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

2  days after being served with these findings and recommendations, any party may file written

3  objections with the court and serve a copy on all parties.  Such a document should be captioned

4  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

5  shall be served and filed within ten days after service of the objections.  The parties are advised

6  that failure to file objections within the specified time may waive the right to appeal the District

7  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

8  DATED: July 9, 2009

9  *Charlene H. Sorrentino*
   CHARLENE H. SORRENTINO

10 UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26